KATHRYN C. WANNER (Cal. Bar No. 269310)
Email:  wannerk@sec.gov
DONALD W. SEARLES
Email:  searlesd@sec.gov

Attorneys for Plaintiff
Securities and Exchange Commission
Katharine E. Zoladz, Regional Director
Gary Y. Leung, Associate Regional Director
Douglas M. Miller, Regional Trial Counsel
444 S. Flower Street, Suite 900
Los Angeles, California 90071
Telephone: (323) 965-3998
Facsimile: (213) 443-1904

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>DAWSON L. DAVENPORT, et al.,<br><br>Defendants. | Case No. 8:21-cv-01427-JLS-JDE<br><br>**PARTIES' COMPETING PROPOSED VERDICT FORM**<br><br>Date:       March 8, 2024<br>Time:       10:30 a.m.<br>Ctrm:       10A<br>Judge:      Hon. Josephine L. Staton<br><br>Final Pretrial Conference:  March 8, 2024 |

1    Plaintiff Securities and Exchange Commission ("SEC") and Defendants Michael

2  Owens, Dawson Davenport, Robert Gunton, Andrea Lindstrom, and Julie Yale

3  ("Defendants") submit the following competing verdict forms.

### SEC'S PROPOSED VERDICT FORM:

We, the jury in the case of *Securities and Exchange Commission v. Michael Owens, Dawson Davenport, Robert Gunton, Andrea Lindstrom, and Julie Yale,* find as follows:

**Claim One**: With respect to the SEC's first claim, which alleges that defendants Michael Owens, Dawson Davenport, Robert Gunton, Andrea Lindstrom, and Julie Yale violated Section 10(b) of the Exchange Act and Rules 10b-5 thereunder (Violation of Antifraud Provisions), we the jury find:

   1.  **<u>The Boiler Room Scheme</u>:**

    **Mr. Owens**

      ___ LIABLE     ____ NOT LIABLE

    **Mr. Davenport**

      ___ LIABLE     ____ NOT LIABLE

    **Ms. Lindstrom**

      ___ LIABLE     ____ NOT LIABLE

   2.  **<u>The RMMH Offering Scheme</u>:**

    **Mr. Owens**

      ___ LIABLE     ____ NOT LIABLE

    **Mr. Davenport**

      ___ LIABLE     ____ NOT LIABLE

    **Mr. Gunton**

      ___ LIABLE     ____ NOT LIABLE

    **Ms. Yale**

      ___ LIABLE     ____ NOT LIABLE

   **3.**  <u>**The False Financial Statement Scheme:**</u>

     **Mr. Davenport**

        \_\_\_ LIABLE    \_\_\_\_ NOT LIABLE

     **Ms. Lindstrom**

        \_\_\_ LIABLE    \_\_\_\_ NOT LIABLE

**Claim Two:** With respect to the SEC's second claim, which alleges that defendants Michael Owens, Dawson Davenport, Robert Gunton, Andrea Lindstrom, and Julie Yale violated Section 17(a) of the Securities Act (Violation of Antifraud Provisions), we the jury find:

   **1.**  <u>**The Boiler Room Scheme:**</u>

     **Mr. Owens**

        \_\_\_ LIABLE    \_\_\_\_ NOT LIABLE

     **Mr. Davenport**

        \_\_\_ LIABLE    \_\_\_\_ NOT LIABLE

     **Ms. Lindstrom**

        \_\_\_ LIABLE    \_\_\_\_ NOT LIABLE

   **2.**  <u>**The RMMH Offering Scheme:**</u>

     **Mr. Owens**

        \_\_\_ LIABLE    \_\_\_\_ NOT LIABLE

     **Mr. Davenport**

        \_\_\_ LIABLE    \_\_\_\_ NOT LIABLE

     **Mr. Gunton**

        \_\_\_ LIABLE    \_\_\_\_ NOT LIABLE

     **Ms. Yale**

        \_\_\_ LIABLE    \_\_\_\_ NOT LIABLE

3. **The False Financial Statement Scheme:**

    **Mr. Davenport**

        \_\_\_ LIABLE     \_\_\_\_ NOT LIABLE

    **Ms. Lindstrom**

        \_\_\_ LIABLE     \_\_\_\_ NOT LIABLE

**Claim Three**: With respect to the SEC's third claim, which alleges that Michael Owens, Robert Gunton, and Julie Yale violated Section 5 of the Securities Act (Offer and Sale of Unregistered Securities), we the jury find:

    **Mr. Owens**

    \_\_\_ LIABLE      \_\_\_\_ NOT LIABLE

    **Mr. Gunton**

    \_\_\_ LIABLE      \_\_\_\_ NOT LIABLE

    **Ms. Yale**

    \_\_\_ LIABLE      \_\_\_\_ NOT LIABLE

**Claim Four**: With respect to the SEC's fourth claim, which alleges that Michael Owens violated Section 15(a) of the Exchange Act (Violation of Broker Registration Requirement), we the jury find:

    **Mr. Owens**

    \_\_\_ LIABLE      \_\_\_\_ NOT LIABLE

Dated: _____          Signed:_____

                                 Presiding Juror

    After this verdict form has been signed, notify the bailiff that you are ready to return to the Courtroom.

1   **Defendants' Position**:

2        Defendants object to the SEC's proposed General Verdict form. The General

3   Verdict form proposed by the SEC undermines the jury's fact-finding role, invites

4   confusion by the jurors, and will require the Court to provide a very long and detailed

5   explanation of the law to the jury, which often invites only more confusion. Moreover,

6   the use of the terms "scheme" and "boiler room" have inconsistent meanings as they are

7   being used and will invite further confusion of the jurors.

8        As a general rule, the court has complete discretion over whether to have the jury

9   return a special verdict or a general verdict. *Floyd v. Laws*, 929 F. 2d 1390, 1395 (9th

10  Cir.1991), citing *Mateyko v. Felix*, 924 F.2d 824, 827 (9th Cir.1991); 5A Moore, ¶

11  49.03[1]; 9 Wright & Miller, § 2505. This discretion extends to determining the form of

12  the special verdict, provided the questions asked are "adequate to obtain a jury

13  determination of the factual issues essential to judgment." *Mateyko*, at 827.

14       The SEC's proposed General Verdict only focuses on findings of law, or

15  "liability", and does not include any special interrogatories adequate to obtain a jury

16  determination of factual issues as required by Rule 49(a) and/or (b). By contrast,

17  Defendants' proposed Special Verdict form compels the jury to focus extensively on its

18  fact-finding role and empowers the judge to play a more prominent role by applying the

19  law to the jury's findings of facts while minimizing the Court's legal instruction to the

20  jurors. *Floyd*, at 1395, citing 5A Moore, ¶¶ 49.02, 49.03[3]. "Needless to say, lay jurors

21  are often left confused and befuddled by the court's instructions." *Id.*, citing 5A Moore, ¶

22  49.03[3].

23       Rule 49(a) applies to "special verdicts." A special verdict consists of a list of

24  interrogatories that calls for findings of fact. *Floyd*, at 1395. On the other hand, Rule

25  49(b) applies to general verdicts, which may be accompanied by special interrogatories.

26  *Id.* While a General Verdict may be appropriate for judged, general verdicts, because of

27  their cryptic nature, are unpopular among some jurists. *Id.*, citing 9 C. Wright & A.

28  Miller, Federal Practice and Procedure: Civil, § 2505 (1971) (hereinafter Wright &

Miller). "Often juries return general verdicts which seem to defy reason, yet courts have no way to monitor the jurors' thinking processes or test their understanding of the law." Id., citing 5A J. Moore, Moore's Federal Practice ¶ 49.02 (2d ed.1989) (hereinafter Moore). As a result, courts often submit special interrogatories to juries, to establish a factual basis for testing the correctness of verdicts and ascertaining their extent. Id., citing 76 Am.Jur.2d Trial § 1175; 9 Wright & Miller §§ 2505, 2511. The SEC has proposed no special interrogatories to test the correctness of the verdict. The role of the jury should be simplified, not complicated, to ensure accuracy, not invited confusion; therefore, Defendants object to the SEC proposed General Verdict form and propose the Special Verdict form that follows.

Furthermore, the SEC's inclusion of the terms "boiler room" and "scheme" without interrogatories or explanations of what those terms mean and how they are being used does nothing more than to seed language that is derogatory, inflammatory, and misleading. In-fact, the SEC is not using those terms in their plain and ordinary meaning, the SEC use of these terms is purely slang, and contradictory. For example, "scheme" means "a large-scale systematic plan or arrangement for attaining a particular object or putting a particular idea into effect", while the use connotates the defendants were "scheming" which means "the activity or practice of making secret or underhanded plans." Oxford Online Dictionary. This would confuse the jurors, is it "large-scale" or "secretive and underhanded", or both? I'm not sure the jury will understand this term, much less the term "boiler room" without a definition, as the literal term is distinguishable from the slang. The use of terms that have two different meanings should be avoided since they're confusing; therefore, this language should be stricken.

# DEFENDANTS' PROPOSED SPECIAL VERDICT FORM

We, the jury impaneled in this matter, hereby answer the Special Verdict questions put to us as follows:

## Claim One: Fraud in Connection with the Purchase or Sale of Securities:

**SALES COMMISSIONS**

1. Did the defendant below conceal the payment of sales commissions to unregistered brokers?

   **Michael Owens:**       ☐ YES          ☐ NO
   **Dawson Davenport:**    ☐ YES          ☐ NO
   **Andrea Lindstrom**:    ☐ YES          ☐ NO

   If "YES" to any of the above, proceed to Question 2. If "NO" to all of the above, proceed to Question 5.

2. Did the representations or omissions related to those sales commissions made by the defendant below involve a "device, scheme or artifice to defraud," meaning it involved (1) false or fraudulent pretenses; (2) untrue statements of material facts, (3) omissions of material facts, or (4) representations, promises and patterns of conduct calculated to deceive?

   **Michael Owens:**       ☐ YES          ☐ NO
   **Dawson Davenport:**    ☐ YES          ☐ NO
   **Andrea Lindstrom**:    ☐ YES          ☐ NO

If "YES" to any of the above, proceed to Question 3. If "NO" to all of the above, proceed to Question 4.

3.  Did the Defendant below have actual control over Elite at the time these statements were made?

| | | |
|---|---|---|
| **Michael Owens:** | ☐ YES | ☐ NO |
| **Dawson Davenport:** | ☐ YES | ☐ NO |
| **Andrea Lindstrom**: | ☐ YES | ☐ NO |

If "YES" to any of the above, proceed to Question 4. If "NO" to all of the above, proceed to Question 5.

4.  Did the defendant below act in good faith, meaning, did the defendant below act honestly, objectively, with no deliberate intent to defraud when the defendant below concealed the payment of sales commissions to unregistered brokers?

| | | |
|---|---|---|
| **Michael Owens:** | ☐ YES | ☐ NO |
| **Dawson Davenport:** | ☐ YES | ☐ NO |
| **Andrea Lindstrom**: | ☐ YES | ☐ NO |

Proceed to Question 5.

**USE OF INVESTOR FUNDS FOR OFFERING COSTS**

5.  Did the defendant below fail to accurately disclose the amount of investor funds that would be used to pay Elite's offering costs?

| | | |
|---|---|---|
| **Michael Owens:** | ☐ YES | ☐ NO |
| **Dawson Davenport:** | ☐ YES | ☐ NO |
| **Andrea Lindstrom**: | ☐ YES | ☐ NO |

If "YES" to any of the above, proceed to Question 6. If "NO" to all of the above, proceed to Question 9.

6. Did the representations or omissions related to the use of investor funds made by the defendant below involve a "device, scheme or artifice to defraud," meaning it involved (1) false or fraudulent pretenses; (2) untrue statements of material facts, (3) omissions of material facts, or (4) representations, promises and patterns of conduct calculated to deceive?

| | | |
|---|---|---|
| **Michael Owens:** | ☐ YES | ☐ NO |
| **Dawson Davenport:** | ☐ YES | ☐ NO |
| **Andrea Lindstrom**: | ☐ YES | ☐ NO |

If "YES" to any of the above, proceed to Question 7. If "NO" to all of the above, proceed to Question 9.

7. Did the Defendant below have actual control over Elite at the time these statements were made?

| | | |
|---|---|---|
| **Michael Owens:** | ☐ YES | ☐ NO |
| **Dawson Davenport:** | ☐ YES | ☐ NO |
| **Andrea Lindstrom**: | ☐ YES | ☐ NO |

If "YES" to any of the above, proceed to Question 8. If "NO" to all of the above, proceed to Question 9.

8. Did the defendant below act in good faith, meaning, did the defendant below act honestly, objectively, with no deliberate intent to defraud when the defendant below failed to accurately disclose the amount of investor funds that would be used to pay Elite's offering costs?

| | | |
|---|---|---|
| **Michael Owens:** | ☐ YES | ☐ NO |
| **Dawson Davenport:** | ☐ YES | ☐ NO |
| **Andrea Lindstrom**: | ☐ YES | ☐ NO |

Proceed to Question 9.

**FOOTNOTE IN FINANCIAL REPORT**

9. Did the defendant below include a false footnote to Elite's unaudited financial statements?

| | | |
|---|---|---|
| **Dawson Davenport:** | ☐ YES | ☐ NO |
| **Andrea Lindstrom**: | ☐ YES | ☐ NO |

If "YES" to any of the above, proceed to Question 10. If "NO" to all of the above, proceed to Question 13.

10. Did the representations or omissions contained in the footnote made by the defendant below involve a "device, scheme or artifice to defraud," meaning it

10

involved (1) false or fraudulent pretenses; (2) untrue statements of material facts, (3) omissions of material facts, or (4) representations, promises and patterns of conduct calculated to deceive?

**Dawson Davenport:**     ☐ YES          ☐ NO

**Andrea Lindstrom**:     ☐ YES          ☐ NO

If "YES" to any of the above, proceed to Question 11. If "NO" to all of the above, proceed to Question 13.

11. Did the Defendant below have actual control over Elite at the time these statements were made?

**Dawson Davenport:**     ☐ YES          ☐ NO

**Andrea Lindstrom**:     ☐ YES          ☐ NO

If "YES" to any of the above, proceed to Question 12. If "NO" to all of the above, proceed to Question 13.

12. Did the defendant below act in good faith, meaning, did the defendant below act honestly, objectively, with no deliberate intent to defraud when the defendant below included a false footnote to Elites unaudited financial statements?

**Dawson Davenport:**     ☐ YES          ☐ NO

**Andrea Lindstrom**:     ☐ YES          ☐ NO

Proceed to Question 7.

11

**RMMH SALE OF ELITE SALES**

13. Did the defendant below sell RMMH's Elite shares by failing to secure authorization from Elite before conducting the private, unregistered offering?

|  |  |  |
|---|---|---|
| **Michael Owens:** | ☐ YES | ☐ NO |
| **Robert Gunton:** | ☐ YES | ☐ NO |
| **Julie Yale:** | ☐ YES | ☐ NO |

If "YES" to any of the above, proceed to Question 14. If "NO" to all of the above, proceed to Question 17.

14. Did the representations or omissions related to the sale of RMMH's shares of Elite made by the defendant below involve a "device, scheme or artifice to defraud," meaning it involved (1) false or fraudulent pretenses; (2) untrue statements of material facts, (3) omissions of material facts, or (4) representations, promises and patterns of conduct calculated to deceive?

|  |  |  |
|---|---|---|
| **Michael Owens:** | ☐ YES | ☐ NO |
| **Robert Gunton:** | ☐ YES | ☐ NO |
| **Julie Yale:** | ☐ YES | ☐ NO |

If "YES" to any of the above, proceed to Question 15. If "NO" to all of the above, proceed to Question 17.

15. Did the Defendant below have actual control over Elite at the time these statements were made?

| **Michael Owens:** | ☐ YES | ☐ NO |
| **Robert Gunton:** | ☐ YES | ☐ NO |
| **Julie Yale:** | ☐ YES | ☐ NO |

If "YES" to any of the above, proceed to Question 16. If "NO" to all of the above, proceed to Question 17.

16. Did the defendant below act in good faith, meaning, did the defendant below act honestly, objectively, with no deliberate intent to defraud when the defendant below failed to secure authorization from Elite before conducting the private, unregistered offering?

| **Michael Owens:** | ☐ YES | ☐ NO |
| **Robert Gunton:** | ☐ YES | ☐ NO |
| **Julie Yale:** | ☐ YES | ☐ NO |

Proceed to Question 17.

**Claim Three: Fraud in the Offer or Sale of Securities**

**SALES COMMISSIONS**

17. Did the defendant below conceal the payment of sales commissions to unregistered brokers?

| **Michael Owens:** | ☐ YES | ☐ NO |

| | | |
|---|---|---|
| **Dawson Davenport:** | ☐ YES | ☐ NO |
| **Andrea Lindstrom**: | ☐ YES | ☐ NO |

If "YES" to any of the above, proceed to Question 18. If "NO" to all of the above, proceed to Question 21.

18. Did the representations or omissions related to those sales commissions made by the defendant below involve a "device, scheme or artifice to defraud," meaning it involved (1) false or fraudulent pretenses; (2) untrue statements of material facts, (3) omissions of material facts, or (4) representations, promises and patterns of conduct calculated to deceive?

| | | |
|---|---|---|
| **Michael Owens:** | ☐ YES | ☐ NO |
| **Dawson Davenport:** | ☐ YES | ☐ NO |
| **Andrea Lindstrom**: | ☐ YES | ☐ NO |

If "YES" to any of the above, proceed to Question 19. If "NO" to all of the above, proceed to Question 21.

19. Did the Defendant below have actual control over Elite at the time these statements were made?

| | | |
|---|---|---|
| **Michael Owens:** | ☐ YES | ☐ NO |
| **Dawson Davenport:** | ☐ YES | ☐ NO |
| **Andrea Lindstrom**: | ☐ YES | ☐ NO |

14

If "YES" to any of the above, proceed to Question 20. If "NO" to all of the above, proceed to Question 21.

20. Did the defendant below act in good faith, meaning, did the defendant below act honestly, objectively, with no deliberate intent to defraud when the defendant below concealed the payment of sales commissions to unregistered brokers?

| | | |
|---|---|---|
| **Michael Owens:** | ☐ YES | ☐ NO |
| **Dawson Davenport:** | ☐ YES | ☐ NO |
| **Andrea Lindstrom**: | ☐ YES | ☐ NO |

Proceed to Question 21.

**USE OF INVESTOR FUNDS FOR OFFERING COSTS**

21. Did the defendant below fail to accurately disclose the amount of investor funds that would be used to pay Elite's offering costs?

| | | |
|---|---|---|
| **Michael Owens:** | ☐ YES | ☐ NO |
| **Dawson Davenport:** | ☐ YES | ☐ NO |
| **Andrea Lindstrom**: | ☐ YES | ☐ NO |

If "YES" to any of the above, proceed to Question 22. If "NO" to all of the above, proceed to Question 25.

22. Did the representations or omissions related to the use of investor funds made by the defendant below involve a "device, scheme or artifice to defraud," meaning it

15

involved (1) false or fraudulent pretenses; (2) untrue statements of material facts, (3) omissions of material facts, or (4) representations, promises and patterns of conduct calculated to deceive?

**Michael Owens:**      ☐  YES        ☐ NO
**Dawson Davenport:**   ☐  YES        ☐ NO
**Andrea Lindstrom**:   ☐  YES        ☐ NO

If "YES" to any of the above, proceed to Question 23. If "NO" to all of the above, proceed to Question 25.

23. Did the Defendant below have actual control over Elite at the time these statements were made?

**Michael Owens:**      ☐  YES        ☐ NO
**Dawson Davenport:**   ☐  YES        ☐ NO
**Andrea Lindstrom**:   ☐  YES        ☐ NO

If "YES" to any of the above, proceed to Question 24. If "NO" to all of the above, proceed to Question 25.

24. Did the defendant below act in good faith, meaning, did the defendant below act honestly, objectively, with no deliberate intent to defraud when the defendant below failed to accurately disclose the amount of investor funds that would be used to pay Elite's offering costs?

**Michael Owens:**      ☐  YES        ☐ NO
**Dawson Davenport:**   ☐  YES        ☐ NO

16

**Andrea Lindstrom**:  ☐ YES  ☐ NO

Proceed to Question 25.

**FOOTNOTE IN FINANCIAL REPORT**

25. Did the defendant below include a false footnote to Elite's unaudited financial statement?

**Dawson Davenport:**  ☐ YES  ☐ NO
**Andrea Lindstrom**:  ☐ YES  ☐ NO

If "YES" to any of the above, proceed to Question 26. If "NO" to all of the above, proceed to Question 29.

26. Did the representations or omissions contained in the footnote made by the defendant below involve a "device, scheme or artifice to defraud," meaning it involved (1) false or fraudulent pretenses; (2) untrue statements of material facts, (3) omissions of material facts, or (4) representations, promises and patterns of conduct calculated to deceive?

**Dawson Davenport:**  ☐ YES  ☐ NO
**Andrea Lindstrom**:  ☐ YES  ☐ NO

If "YES" to any of the above, proceed to Question 27. If "NO" to all of the above, proceed to Question 29.

27. Did the Defendant below have actual control over Elite at the time these statements were made?

       **Dawson Davenport:**    ☐ YES        ☐ NO

       **Andrea Lindstrom**:    ☐ YES        ☐ NO

If "YES" to any of the above, proceed to Question 28. If "NO" to all of the above, proceed to Question 29.

28. Did the defendant below act in good faith, meaning, did the defendant below act honestly, objectively, with no deliberate intent to defraud when the defendant below included a false footnote to Elite's unaudited financial statement?

       **Dawson Davenport:**    ☐ YES        ☐ NO

       **Andrea Lindstrom**:    ☐ YES        ☐ NO

Proceed to Question 29.

**RMMH SALE OF ELITE SHARES**

29. Did the defendant below sell RMMH's Elite share by falsely stating that Elite's transfer agent would issue new stock certificates?

       **Michael Owens:**    ☐ YES        ☐ NO

       **Robert Gunton:**    ☐ YES        ☐ NO

       **Julie Yale:**    ☐ YES        ☐ NO

If "YES" to any of the above, proceed to Question 30. If "NO" to all of the above, proceed to Question 33.

30. Did the representations or omissions related to the sale of RMMH's shares of Elite made by the defendant below involve a "device, scheme or artifice to defraud," meaning it involved (1) false or fraudulent pretenses; (2) untrue statements of material facts, (3) omissions of material facts, or (4) representations, promises and patterns of conduct calculated to deceive?

| | | |
|---|---|---|
| **Michael Owens:** | ☐ YES | ☐ NO |
| **Robert Gunton:** | ☐ YES | ☐ NO |
| **Julie Yale:** | ☐ YES | ☐ NO |

If "YES" to any of the above, proceed to Question 31. If "NO" to all of the above, proceed to Question 33.

31. Did the Defendant below have actual control over Elite at the time these statements were made?

| | | |
|---|---|---|
| **Michael Owens:** | ☐ YES | ☐ NO |
| **Robert Gunton:** | ☐ YES | ☐ NO |
| **Julie Yale:** | ☐ YES | ☐ NO |

If "YES" to any of the above, proceed to Question 32. If "NO" to all of the above, proceed to Question 33.

32. Did the defendant below act in good faith, meaning, did the defendant below act honestly, objectively, with no deliberate intent to defraud when the defendant below when falsely stating that Elite's transfer agent would issue new stock certificates?

| | | |
|---|---|---|
| **Michael Owens:** | ☐ YES | ☐ NO |
| **Robert Gunton:** | ☐ YES | ☐ NO |
| **Julie Yale:** | ☐ YES | ☐ NO |

Proceed to Question 33.

## **Claim Four: Unregistered Offer and Sale of Securities**

33. Was RMMH's shares of Elite sold registered with the SEC?

| | | |
|---|---|---|
| **Defendants:** | ☐ YES | ☐ NO |

If "NO" to any of the above, proceed to Question 34. If "YES" to all of the above, proceed to Question 43.

34. Did the Defendant below know that RMMH's sale of Elite shares was not registered with the SEC?

| | | |
|---|---|---|
| **Michael Owens:** | ☐ YES | ☐ NO |
| **Robert Gunton:** | ☐ YES | ☐ NO |
| **Julie Yale:** | ☐ YES | ☐ NO |

If "YES" to any of the above, proceed to Question 34. If "NO" to all of the above, proceed to Question 43.

35. Did the defendant below take reasonable steps to verify that each purchaser of RMMH's shares of Elite were "Accredited Investors," meaning individuals with a net worth or joint net worth with their spouse, exceeding $ $1,000,000.?

        **Michael Owens:**    ☐ YES       ☐ NO
        **Robert Gunton:**    ☐ YES       ☐ NO
        **Julie Yale:**    ☐ YES       ☐ NO

Proceed to Question 35.

36. Did the defendant below act in good faith, meaning, did the defendant below act honestly, objectively, with no deliberate intent to defraud knowing the sale of RMMH's Elite shares were not registered with the SEC?

        **Michael Owens:**    ☐ YES       ☐ NO
        **Robert Gunton:**    ☐ YES       ☐ NO
        **Julie Yale:**    ☐ YES       ☐ NO

Proceed to Question 35.

37. Was there no exemption to the registration requirements available for the sale of RMMH's Elite shares that were not registered with the SEC; and did the defendant below know there was no exemption to the registration requirements available?

| | | |
|---|---|---|
| **Michael Owens:** | ☐ YES | ☐ NO |
| **Robert Gunton:** | ☐ YES | ☐ NO |
| **Julie Yale:** | ☐ YES | ☐ NO |

If "NO" to any of the above, proceed to Question 36. If "YES" to all of the above, proceed to Question 43.

38. Did the defendant below act in good faith, meaning, did the defendant below act honestly, objectively, with no deliberate intent to defraud knowing there was an exemption to the registration requirements of the SEC?

| | | |
|---|---|---|
| **Michael Owens:** | ☐ YES | ☐ NO |
| **Robert Gunton:** | ☐ YES | ☐ NO |
| **Julie Yale:** | ☐ YES | ☐ NO |

Proceed to Question 37.

39. Was RMMH owned and controlled by **Michael Owens** when RMMH's Elite shares were offered and sold;

| | | |
|---|---|---|
| **Defendants:** | ☐ YES | ☐ NO |

Proceed to Question 38.

40. Did **Robert Gunton** solicit investors in the RMMH offering?

| | | |
|---|---|---|
| **Defendants:** | ☐ YES | ☐ NO |

Did the defendant below act in good faith, meaning, did the defendant below act honestly, objectively, with no deliberate intent to defraud?

**Michael Owens:**    ☐ YES     ☐ NO

**Robert Gunton:**    ☐ YES     ☐ NO

**Julie Yale:**    ☐ YES     ☐ NO

Proceed to Question 40.

41. Was **Julie Yale** a necessary participant and substantial factor in RMMH's unregistered sales?

**Defendants:**    ☐ YES     ☐ NO

If "YES" to any of the above, proceed to Question 42. If "NO" to all of the above, proceed to Question 43.

42. Did **Julie Yale** act in good faith, meaning, did **Julie Yale** act honestly, objectively, with no deliberate intent to defraud?

**Defendants:**    ☐ YES     ☐ NO

Proceed to Question 43.

**Fifth Claim: Unregistered Broker-Dealer**

43. Was **Michael Owens** an employee of Elite?

23

**Michael Owens:**        ☐  YES            ☐ NO

If "YES" to the above, proceed to Question 44. If "NO" to the above, proceed to Question 44.

44. Did the **Michael Owens** receive commissions from the sale of Elite's securities?

**Michael Owens:**        ☐  YES            ☐ NO

Proceed to Question 45.

45. Did **Michael Owens** sell Elite securities?

**Michael Owens:**        ☐  YES            ☐ NO

Proceed to Question 46.

46. Was **Michael Owens** involved in negotiations between issuers and investors?

**Michael Owens:**        ☐  YES            ☐ NO

Proceed to Question 47.

47. Did **Michael Owens** make valuations as to the merits of investment or give advice to potential investors?

**Michael Owens:**        ☐  YES            ☐ NO

Proceed to Question 48.

48. Was **Michael Owens** an active, rather than a passive, finder of investors?

      **Michael Owens:**    ☐ YES     ☐ NO

      Proceed to Question 49.

49. Did **Michael Owens**, when considering the "totality of the circumstances" engage in the business of effecting transactions in securities for the accounts of others?

      **Michael Owens:**    ☐ YES     ☐ NO

      Proceed to Question 50.

50. Did **Michael Owens** act in good faith, meaning, did **Michael Owens** act honestly, objectively, with no deliberate intent to defraud when **Michael Owens** acted as an unregistered broker?

      **Michael Owens:**    ☐ YES     ☐ NO

      Proceed to Question 51.

**<u>Affirmative Defense: Likelihood of Repeat Acts</u>**

51. Is there a reasonable likelihood that the defendant below will offer or sale securities in the future?

| | | |
|---|---|---|
| **Michael Owens:** | ☐ YES | ☐ NO |
| **Dawson Davenport:** | ☐ YES | ☐ NO |
| **Robert Gunton:** | ☐ YES | ☐ NO |
| **Andrea Lindstrom**: | ☐ YES | ☐ NO |
| **Julie Yale:** | ☐ YES | ☐ NO |

Proceed to Question 52.

**Affirmative Defense: Adverse effects versus Benefits**

52. Would the adverse effects outweigh of an injunction prohibiting the defendant below to offer or sell securities outweigh any benefits?

| | | |
|---|---|---|
| **Michael Owens:** | ☐ YES | ☐ NO |
| **Dawson Davenport:** | ☐ YES | ☐ NO |
| **Robert Gunton:** | ☐ YES | ☐ NO |
| **Andrea Lindstrom**: | ☐ YES | ☐ NO |
| **Julie Yale:** | ☐ YES | ☐ NO |

Proceed to Question 53.

**Affirmative Defense: Intent**

53. Did the defendant below intend to violate the Securities Exchange Act?

**Michael Owens:** ☐ YES ☐ NO

**Dawson Davenport:** ☐ YES ☐ NO

**Robert Gunton:** ☐ YES ☐ NO

**Andrea Lindstrom**: ☐ YES ☐ NO

**Julie Yale:** ☐ YES ☐ NO

Proceed to Question 54

54. If the defendant below violated the Securities Exchange Act, where the defendant below's acts isolated incidences and not likely to be repeated in the future?

**Michael Owens:** ☐ YES ☐ NO

**Dawson Davenport:** ☐ YES ☐ NO

**Robert Gunton:** ☐ YES ☐ NO

**Andrea Lindstrom**: ☐ YES ☐ NO

**Julie Yale:** ☐ YES ☐ NO

Proceed to Question 55.

**Damages: Disgorgement**

55. Did the defendant below receive any ill-gotten profits or direct economic gains as a result of any wrongful conduct?

**Michael Owens:** ☐ YES ☐ NO

**Dawson Davenport:** ☐ YES ☐ NO

27

| | | |
|---|---|---|
| **Robert Gunton:** | ☐ YES | ☐ NO |
| **Andrea Lindstrom**: | ☐ YES | ☐ NO |
| **Julie Yale:** | ☐ YES | ☐ NO |

If "YES" to any of the above, proceed to Question 56. If no, please stop.

56. How much were the ill-gotten profits of the defendant below?

| | |
|---|---|
| **Michael Owens:** | $_____ |
| **Dawson Davenport:** | $_____ |
| **Robert Gunton:** | $_____ |
| **Andrea Lindstrom**: | $_____ |
| **Julie Yale:** | $_____ |

You have completed the special verdict questions. Please stop.

1 | **SEC's Position**:

2 | The SEC objects to the entirety of Defendants' proposed 54-question special

3 | verdict form.  Nowhere in their special verdict from do Defendants ask the jury to

4 | determine the fundamental question of whether Defendants are liable on any of the

5 | SEC's claims.

6 | **Antifraud Claims**

7 | Defendants attempt to distort the SEC's claims under Section 10(b) of Exchange

8 | Act and Rule 10b-5 and Section 17(a) of the Securities Act into a false statements case,

9 | rather than a scheme case, by asking the jury to determine whether "the representations

10 | and omissions made by the defendant involved (1) false or fraudulent pretenses; (2)

11 | untrue statements of material facts, (3) omissions of material facts, or (4)

12 | representations, promises and patterns of conduct calculated to deceive." *See, e.g.*,

13 | Question Nos. 2, 6, 10, 14, 18, 22, 26, 30.  The Court has already rejected Defendants'

14 | attempt to turn this case into a false statements case.  *See* Dkt. No. 45 at 9; *see also*

15 | *United States v. Wood*, 335 F.3d 993, 997 (9th Cir. 2002) ("[i]f a scheme is devised with

16 | the intent to defraud, and the mails are used in executing the scheme, the fact that there

17 | is no misrepresentation of a single existing fact is immaterial. It is only necessary to

18 | prove that it is a scheme reasonably calculated to deceive, and that the mail service of

19 | the United States was used and intended to be used in the execution of the scheme."

20 | (quoting *Lustiger v. United States*, 386 F.2d 132, 138 (1967)); *see also Lorenzo v. SEC*,

21 | 139 S. Ct. 1094 (2019).

22 | Defendants also propose a series of questions regarding their liability as "control

23 | persons."  Question Nos. 3, 7, 11, 15, 19, 23, 27, 31.  All of these questions are

24 | irrelevant, as the SEC has not pled a claim under Section 20A of the Exchange Act.

25 | Moreover, those questions are misleading, as the SEC is not required to prove

26 | Defendants were the "maker" of any statement, or that they had ultimate authority and

27 | control over when and how to communicate the statement.  *Lorenzo v. SEC*, 139 S. Ct.

28 | 1094 (2019) (holding that knowingly disseminating a false statement to investors with

29

1  intent to deceive can violate the anti-fraud provisions of the securities laws even if the

2  defendant is not a maker of the statement for purposes of *Janus Cap. Group, Inc. v First*

3  *Derivative Traders*, 564 U.S. 135, 142 (2011)); *see also* Dkt. No. 45 at 9

4  **RMMH Sales**

5        Defendants propose asking the jury whether Defendants Owens, Gunton and Yale

6  knew that RMMH's sales of Elite shares was not registered with the SEC, whether they

7  knew there was no applicable exemption from the registration requirements, and whether

8  the defendants acted with deliberate intent to defraud when selling those shares or when

9  soliciting investors.  Question Nos. 34, 36, 37, 38, 39, 42.  The SEC's Section 5 claim is

10  a strict liability violation.  *SEC v. Schooler*, 905 F.3d 1107, 1115 (9th Cir. 2018).

11  Hence, it is no defense that defendants thought that the RHHM sales were not required

12  to be registered. *SEC v. CMKM Diamonds, Inc*., 729 F.3d 1248, 1256, n.6 (9th Cir.

13  2013) (good faith belief that sales in question were legal not a defense to Section 5

14  violation).

15        Similarly, Defendants propose asking the jury whether Defendants Owens,

16  Gunton and Yale took reasonable steps to verify that each purchaser of RMMH's shares

17  were accredited.  Defendants are attempting to invoke an exemption under Rule 506 of

18  Regulation D which is only available to issuers.  Neither RMMH, nor Owens, Gunton or

19  Yale were issuers.  Hence, it is irrelevant whether RMMH's shares were sold to

20  accredited investors.  *See Masa Fukada v. Nethercott*, No. 2:113-cv-917-JNP-PMW

21  2016 U.S. Dist. LEXIS 92462, at *10 (D. Utah July 15, 2016).

22  **Section 15(a)**

23        Owens proposes a series of questions to the jury on each of the so-called *Hansen*

24  factors as to whether someone is engaged in the business of effecting transactions in

25  securities for the accounts of others.  *SEC v. Feng*, 935 F.3d 721, 732 (9th Cir. 2019);

26  *SEC v. Hansen*, No. 83 CIV. 3692, 1984 U.S. Dist. LEXIS 17835, 1984 WL 2413, at

27  *10 (S.D.N.Y. Apr. 6, 1984) (setting forth the "*Hansen* factors").  *See* Questions No. 43-

28  49.  The SEC's proposed jury instruction regarding the elements of Section 15(a) and the

definition of "broker" adequately instructs the jury on the elements of the violation and the factors the juror may consider in determining whether someone is a broker.  A specific verdict as to each of those factors is unnecessary and unduly confusing.  Moreover, the question of whether Owens received commissions from the sale of Elite's securities, or directly sold Elite's securities misstates the law.  The question is whether Owens effected any transactions, or induced or attempted to induce the purchase or sale of any security.  The test is not whether the compensation qualifies as a commission, but whether the compensation was "transaction-based."  S*EC v. LFS Funding Ltd. P'ship*, No. 2:21-CV-04211-HDV, MARx, 2023 U.S. Dist. LEXIS 179194, at *17 (C. D. Cal. Aug. 25, 2023).

Owens also proposes a question of whether he acted in good faith when he acted as unregistered broker.  Question No. 50.  Since Section 15(a) is a strict liability statute, his good faith is irrelevant.  *SEC v. Qi*, No. CV 17-08856-CJC (JCx), 2018 U.S. Dist. LEXIS 23918, at *18 (C.D. Cal. Mar. 21, 2018) (Section 15(a) is a strict liability statute).

**Affirmative Defenses**

Defendants also propose of series of questions that, at best, relate to the relief the Court should impose in the event the jury finds Defendants liable on any of the SEC's claims.  Question Nos. 51-56.  Since the Court will determine remedies, none of the proposed questions are appropriate.

DATED:  March 1, 2024          Respectfully submitted,

                                                */s/ Kathryn C. Wanner*
                                                Kathryn C. Wanner
                                                Donald W. Searles
                                                Counsel for Plaintiff
                                                Securities and Exchange Commission

[e-signatures continued on the next page

Dated:  March 1, 2024

*/s/ John D. Van Loben Sels*

John D. Van Loben Sels
Brittany M. Nobles
Counsel for Defendants
Robert A. Gunton, Andrea J. Lindstrom
and Michael P. Owens

Dated:  March 1, 2024

*/s/ Richard D. Farkas*

Richard D. Farkas
Counsel for Defendant
Julie A. Yale

## LOCAL RULE 5-4.3.4(a)(2)(i) CERTIFICATION

Pursuant to Local Rule 5-4.3.4(a)(2)(i), I, Kathryn C. Wanner, attest that all other signatories listed above, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.


Dated:  March 1, 2024

_/s/ Kathryn C. Wanner_
Kathryn C. Wanner
Counsel for Plaintiff
Securities and Exchange Commission

# PROOF OF SERVICE

I am over the age of 18 years and not a party to this action.  My business address is:

U.S. SECURITIES AND EXCHANGE COMMISSION,
444 S. Flower Street, Suite 900, Los Angeles, California 90071
Telephone No. (323) 965-3998; Facsimile No. (213) 443-1904.

On March 1, 2024, I caused to be served the document entitled **PARTIES' COMPETING PROPOSED VERDICT FORM** on all the parties to this action addressed as stated on the attached service list:

☐ **OFFICE MAIL:** By placing in sealed envelope(s), which I placed for collection and mailing today following ordinary business practices.  I am readily familiar with this agency's practice for collection and processing of correspondence for mailing; such correspondence would be deposited with the U.S. Postal Service on the same day in the ordinary course of business.

☐ **PERSONAL DEPOSIT IN MAIL:** By placing in sealed envelope(s), which I personally deposited with the U.S. Postal Service.  Each such envelope was deposited with the U.S. Postal Service at Los Angeles, California, with first class postage thereon fully prepaid.

☐ **EXPRESS U.S. MAIL:** Each such envelope was deposited in a facility regularly maintained at the U.S. Postal Service for receipt of Express Mail at Los Angeles, California, with Express Mail postage paid.

☐ **HAND DELIVERY:** I caused to be hand delivered each such envelope to the office of the addressee as stated on the attached service list.

☐ **UNITED PARCEL SERVICE:** By placing in sealed envelope(s) designated by United Parcel Service ("UPS") with delivery fees paid or provided for, which I deposited in a facility regularly maintained by UPS or delivered to a UPS courier, at Los Angeles, California.

☐ **ELECTRONIC MAIL:** By transmitting the document by electronic mail to the electronic mail address as stated on the attached service list.

☒ **E-FILING:** By causing the document to be electronically filed via the Court's CM/ECF system, which effects electronic service on counsel who are registered with the CM/ECF system.

☐ **FAX:** By transmitting the document by facsimile transmission.  The transmission was reported as complete and without error.

I declare under penalty of perjury that the foregoing is true and correct.

Date: March 1, 2024                          */s/ Kathryn C. Wanner*

                                             Kathryn C. Wanner

*SEC v. Dawson Davenport, et al.*
**United States District Court—Central District of California**
**Case No. 8:21-cv-01427-JLS-JDE**

## SERVICE LIST

John D. Van Loben Sels, Esq. (via CM/ECF)
Brittany M. Nobles, Esq.
THOITS LAW
400 Main Street, Suite 250
Los Altos, CA 94022
Email:  jvanlobensels@thoits.com
Email:  bnobles@thoits.com
***Attorney for Defendants Dawson L. Davenport, Robert A. Gunton, Andrea J. Lindstrom and Michael P. Owens***

Richard D. Farkas, Esq. (via CM/ECF)
LAW OFFICES OF RICHARD D. FARKAS
18401 Burbank Boulevard, Suite 210
Tarzana, CA 91356
Email:  richarddfarkas@gmail.com
***Attorney for Defendant Julie A. Yale***