JEFFER MANGELS BUTLER & MITCHELL LLP
JOHN VAN LOBEN SELS (Bar No. 201354)
JvanLobenSels@jmbm.com
Two Embarcadero Center, 5th Floor
San Francisco, California 94111-3813
Telephone: (415) 398-8080
Facsimile: (415) 398-5584

*Attorneys for Defendants*,
Dawson L. Davenport; Robert A. Gunton;
Andrea J. Lindstrom; Michael P. Owens

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,, <br><br> Plaintiff, <br><br> v. <br><br> DAWSON L. DAVENPORT, an Individual; ELITE AEROSPACE GROUP, INC. f/k/a/ ELITE AVIATION PRODUCTS, INC.; ROBERT A. GUNTON, an individual, ANDREA J. LINDSTROM, an individual, MICHAEL P. OWENS, DUSTIN B. TILLMAN, JULIE A. YALE; and ZEESHAWN ZIA, <br><br> Defendants. | Case No. 8:21-cv-1427 <br><br> **DEFENDANTS DAVENPORT, OWENS, GUNTON, AND LINDSTROM'S SUPPLEMENTAL BRIEF PURSUANT TO COURT'S ORDER** <br><br> Date: December 20, 2024 (Completed) <br> Time: 1:30 p.m. <br> Crtrm: 580, Roybal Federal Building <br><br> Judge: Hon. Patricia Donahue |

Pursuant to the Court's Minutes issued following the hearing on Plaintiff Securities and Exchange Commission's (SEC) Motion for Remedies (Dkt. 240), Defendants Dawson Davenport, Michael Owens, Robert Gunton, and Andrea Lindstrom (collectively, "Defendants") submit this Supplemental Brief concerning the consent judgments by Dustin Tillman ("Tillman") and Zeeshawn Zia ("Zia")(Dkts. 253 and 254), which were filed after the close of trial and Defendants' deadline to oppose the SEC's remedies briefing as follows:

72875021v1

---

DEFENDANTS DAVENPORT, OWENS, GUNTON, AND LINDSTROM'S SUPPLEMENTAL BRIEF
PURSUANT TO COURT'S ORDER

The SEC's pursuit of devastating civil penalties and disgorgement from each of Defendants, who never controlled Elite or its sale of securities, while seeking *zero* dollars in civil penalties or disgorgement from either of Elite's President or CEO Tillman and Zia defies logic and equity from every perspective. Moreover, there is no evidence in the trial record justifying the "conduct restrictions" the SEC seeks to impose on Defendants well beyond the scope of injunctive relief it agreed for Tillman and Zia.  The SEC's willingness to impose no financial penalties on the admitted Elite wrongdoers (Tillman and Zia) who each admitted at trial to lying to Elite's investors, while simultaneously seeking millions from each of Defendants is inexplicable. It is plain the SEC's approach to the penalties and remedies sought in this case impermissibly strays from the purpose and limitations of the SEC's own stated mission of protecting investors, maintaining fair, orderly, and efficient markets, and facilitating capital formation. The SEC itself states:

> The federal securities laws we oversee are based on a simple and straightforward concept: ***everyone should be treated fairly***…
> ***Companies offering securities for sale to the public must tell the truth about their business, the securities they are selling, and the investment risks***…
> We protect investors by ***vigorously enforcing the federal securities laws to ensure truth and fairness***. We deter misconduct, ***hold wrongdoers accountable***…[1] (emphasis added).

Furthermore, "the proper standard for reviewing a proposed consent judgment involving an enforcement agency requires that the district court determine whether the proposed consent decree is fair and reasonable, with the additional requirement that the 'public interest would not be disserved,' in the event that the consent decree includes injunctive relief." *U.S.S.E.C. v. Citigroup Glob. Markets, Inc*., 752 F.3d 285, 294 (2d Cir. 2014) quoting *eBay, Inc. v. MercExchange*, 547 U.S. 388, 391 (2006). "As part of its review, the district court will necessarily establish that a factual basis exists for the proposed decree. In many cases, setting out the colorable claims, supported by factual averments by the S.E.C., neither admitted nor denied

---

[1] https://www.sec.gov/about/mission#:~:text=At%20the%20Securities%20and%20Exchange,to%20secure%20their%20financial%20futures. Accessed January 1, 2025.

by the wrongdoer, will suffice to allow the district court to conduct its review." *Citigroup*, 752 F.3d at 295. However, "[o]ther cases may require more of a showing, for example, if the district court's initial review of the record raises a suspicion that the consent decree was entered into as a result of improper collusion between the S.E.C. and the settling party." *Id.* Here, the facts and evidence in the record should raise such suspicion by the Court. Though Tillman and Zia denied SEC promises of a *quid pro quo* for their testimony at trial against Defendants, their admission on the stand of having rehearsed their testimony with counsel for the SEC strongly suggests otherwise. First, the SEC's choice to seek no monetary penalties against Tillman or Zia in the consents and proposed judgments filed after Defendants' opposition deadline to the SEC's remedies brief reveals a strategy that Defendants feared from the outset – namely, that Tillman and Zia fabricated a story to the SEC to shield themselves from liability so long as they pointed the finger of blame at Defendants. Similarly, despite the undisputed fact that Tillman and Zia exercised absolute control over Elite – the SEC inexplicably sought no conduct restrictions in the agreed injunctions with their settlements. Critically, Tillman and Zia's both testified that while they were the owners and managers of Elite, **Elite**, not Defendants, and each made misrepresentations about its business in private placement memoranda to investors. Tr. Tx., Day 2, 193:13-195:10; Tr. Tx. Day 7, 180:10-17 [Zia had others assist him in preparing PPMs for the sale of Elite's unregistered securities]. Despite these facts, the SEC is not "vigorously enforcing the securities laws" against either Tillman or Zia. *See id*. That is, by this case, the SEC has chosen ***not*** to "hold [these] wrongdoers accountable," despite Tillman and Zia's admissions and the bankruptcy court's determination that it was Tillman and Zia who had "absolute" control of the company, at all times relevant to the loss of shareholder value:

> Not only were Zeeshawn Zia and Dustin Tillman the President and Chief Executive Officer of EAG and the Subsidiaries, but according to the Debtors' 2019 consolidated federal tax return, Mr. Zia and Mr. Tillman each owned 43% of the voting stock in EAG. Thus, the control of Mr. Zia and Mr.

1   Tillman over the Debtors was absolute…

2   Tr. Ex. 1650, fn. 2. The SEC chose inexplicably to pursue enormous and wholly
3   unjustified penalties and disgorgement from defendant third parties whose
4   involvement with Elite's offer and sale of securities never included any decision
5   making power. Nor did the SEC present at trial any evidence that even indicated that
6   Defendants ever held such power. These deficiencies cause the SEC to stray
7   impermissibly from the SEC's own stated mission and purpose and should not be
8   sustained. This is further underscored by the SEC's unfounded claim that
9   Defendants caused $67 million in shareholder losses as a basis for the remedies and
10  penalties it seeks. Dkt. 240-1 at 7.

11  At trial, Tillman and Zia testified to limited relationships with the SEC prior
12  to providing their testimony but those relationships cast grave doubt on the
13  legitimacy of their consents and judgments. Tillman testified he spent two days
14  going over his testimony with the SEC in-person, months prior when trial was
15  scheduled for an earlier date, and then for about two hours in the weeks before his
16  testimony at trial. (Tr. Tx., Day 2 at 138:3-25; 139:5-10; 140:7-11, 15-24; 141:18-
17  24). He reviewed exhibits with the SEC who practiced asking him questions similar
18  to those he would be asked at trial. *Id.* at 140:7-11. Zia testified he reviewed prior
19  testimony with the SEC's attorneys, had an in-person meeting lasting two to three
20  hours, and a call prior to giving testimony at trial. Tr. Tx. Day 8, 37:5-38:3. What
21  possible substantial help could these two have provided the SEC in that time frame
22  that warranted a total reprieve from the threat of any financial consequences for
23  their leadership in the sale of securities to Elite's investors and their failure of
24  leadership that rendered those securities valueless? Indeed, the SEC has nationwide
25  subpoena power and could have required Tillman and Zia to provide truthful
26  testimony without promises of leniency. Indeed, neither the SEC nor Tillman and
27  Zia provided the Court with evidence of any cooperation – beyond providing
28  truthful trial testimony – that assisted the SEC in the presentation of its case against

Defendants. In other words, there is no evidence Tillman or Zia made any contribution to the case other than appearing for testimony as their subpoenas required them to do. It defies credulity that the cooperation Tillman and Zia gave the SEC should warrant zero financial consequences for their admitted lies to investors and destruction of shareholder value, while Defendants should instead be the sole subjects of those consequences. This is particularly true given that the SEC presented absolutely no evidence at trial that any statement or conduct of Defendants caused, or even contributed to, investor harm.

Further, SEC claims without evidence that Defendants are responsible for $67 million in shareholder losses, and it is those loses alone that the SEC contends is the basis for the financial remedies the SEC seeks. In view of the total failure of proof on loss causation, the SEC has not treated Defendants fairly and instead seeks to impose upon them the grave penalties and remedies that more appropriately should be borne by Tillman and Zia who had "absolute" control over Elite. Tr. Ex. 1650, fn. 2. Despite the jury's findings of liability (for what specific acts are unknown since no such findings of fact were made), no findings of fact were made that Defendants ever made a false statement to any investor or otherwise harmed one. In contrast, Tillman admitted on the stand he made false representations to Elite's investors and subsequently changed his testimony concerning core issues of liability prior to the SEC's filing of proposed judgments as to penalties it would recommend be imposed against him. Tr. Tx., Day 2, *supra*. Zia likewise admitted he knowingly made false statements to Elite investors on conference calls and when asked, "Mr. Zia, you admit to committing securities fraud in this case?" he replied, "Oh, yes." Tr. Tx., Day 8, 29:11-30:10. Zia's testimony cannot be reconciled with his no admit-no deny consent and the proposed judgment. That is, there is no factual basis for the proposed decree. *See Citigroup, supra*. Moreover, Zia's testimony underscores the failure of the SEC to operate fairly, according to the law, and within the bounds of its own mission.

Furthermore, the SEC believes that a finding of liability under each of the legal claims necessarily means each of its allegations in the complaint to the extent they concerned an essential element of those claims, and where there were multiple factual theories for violations under each claim, were true. There is no authority for that position, in particular where the SEC alleged various ways in the complaint and its case at trial that it claimed Defendants violated securities laws. But a finding of liability does not create findings of fact where none were made, even if the liability finding requires that the essential elements of the claim were all found to by the jury to have been met. Indeed, as set forth in Defendants' Opposition, it is impossible to tell what acts the jury deemed violative of any of the legal claims because the SEC ensured through its jury verdict form that the jury would be precluded from actually rending any findings of fact as to those issues determinative of whether the remedies sought should be granted and to what degree. This is critical in view of the facts established at trial by Tillman and Zia's admissions, and the bankruptcy court's determination of their sole control of Elite during its demise.

In view of the foregoing, it is confounding that the SEC seeks from Defendants the full remedies and civil penalties it believes should be imposed on the parties responsible for $67 million in Elite's shareholder losses when the SEC was presented with evidence at trial establishing that the individuals ultimately responsible for those losses were Tillman and Zia. *See* Tr. Ex. 1650.  From the evidence adduced at trial, the SEC must know the appropriate parties against whom it seeks to impose those devastating consequences are not Defendants, but Tillman and Zia. That the SEC has instead chosen to seek the imposition of those severe penalties against Defendants reflects either a grave misunderstanding of who is responsible for Elite's loss of shareholder value, materially prejudicing Defendants, or an outright refusal to admit that those parties are not Defendants, representing a willful departure from the SEC's mission and controlling law, which should not be entertained to the detriment of Defendants.

DATED: January 3, 2024

JEFFER MANGELS BUTLER & MITCHELL LLP
JOHN VAN LOBEN SELS

By: */S/John van Loben Sels*
 JOHN VAN LOBEN SELS
*Attorneys for Defendants*,
Dawson L. Davenport; Robert A. Gunton; Andrea J. Lindstrom; Michael P. Owens